**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION**

**CIVIL ACTION NO. 07-430-C**

**RANDY FOWLER,**   **PLAINTIFF,**

**V.**     **MEMORANDUM OPINION AND ORDER**

**UNUM LIFE INSURANCE COMPANY
OF AMERICA, ET AL.,**   **DEFENDANTS.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the plaintiff's brief in support of his claim for disability benefits (R. 27), and the defendant's memorandum in support of the administrative decision (R. 30), which the Court will construe as cross-motions for summary judgment. The court will grant the defendant's motion and deny the plaintiff's motion because the administrative decision was not arbitrary or capricious.

**I.**     **Background**

The plaintiff, Randy Fowler, filed a claim for long-term disability ("LTD") benefits with the defendant, Unum Life Insurance Company of America, in January 2004, alleging that he was unable to work because of a work-related knee injury. AR at UACL00714. Shortly thereafter, the defendant granted the plaintiff's claim for benefits and started paying him in accordance with his insurance policy. The plaintiff initially qualified for benefits because he satisfied the LTD policy's definition of "disability" since he could not perform his "own occupation" as a Mac

Tools distributor.  However, after Fowler had received LTD benefit payments for twenty-four months, the policy required the defendant to apply a different definition of "disability": whether Fowler could perform the duties of "any gainful occupation for which [he was] reasonably fitted by education, training, or experience."

As the end of the "own occupation" period approached, the defendant began evaluating the plaintiff's claim to determine whether he could qualify under the "any gainful occupation" standard.  Upon reviewing the plaintiff's medical records and consulting his treating physician and a vocational rehabilitation consultant, the defendant concluded that the plaintiff would no longer be eligible for benefits after the first twenty-four months of payments because he could perform sedentary work.  The plaintiff then appealed the defendant's decision and argued that the opinion of Raymond Shea, M.D., the plaintiff's orthopaedic surgeon, showed that he would never be released to return to any type of work.

That appeal was denied on September 1, 2005.  AR at UACL00385-387.  The plaintiff then filed a second appeal, and, in response, the defendant requested an independent medical examination ("IME") of the plaintiff.  AR at UACL00167.  Andrew L. DeGruccio, M.D., an orthopaedic surgeon, examined the plaintiff on March 27, 2006, and issued a written report, AR at UACL00117-119.  Based on Dr. DeGruccio's findings, the defendant again denied the plaintiff's claim and closed the administrative record.  AR at UACL00085.

The plaintiff commenced this action on August 15, 2007.

**II.     Legal Analysis**

    **A.     Standard of Review**

The court must apply the "arbitary and capricious" standard of review when determining the propriety of the defendant's administrative decision. This action is a suit to recover LTD benefits, and the plaintiff's LTD policy is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* Under ERISA, a district court analyzes the decision of the plan administrator using either a "*de novo*" or an "arbitrary and capricious" review standard, depending on whether the plan grants the administrator discretionary authority. *Sanford v. Harvard Indus., Inc.,* 262 F.3d 590, 595 (6th Cir. 2001); *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The plaintiff does not dispute that his LTD policy grants discretionary authority to the plan administrator. Therefore, the court must examine the administrative record to determine whether the defendant's decision was arbitrary and capricious.

"[T]he arbitrary and capricious standard is the least demanding form of judicial review of administrative action. When applying the arbitrary and capricious standard, the Court must decide whether the plan administrator's decision was 'rational in light of the plan's provisions.'" *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000) (citing *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989); quoting *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988)). The court's review is confined to the administrative record as it existed on

3

April 18, 2006, when the defendant issued its final decision upholding the denial of the plaintiff's LTD benefits. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998). If the administrative record thus limited can support a "reasoned explanation" for the defendant's decision, then the decision is not arbitrary or capricious. *Williams*, 227 F.3d at 712. In other words, the administrative decision will be upheld "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991).

Nevertheless, merely because the court's review must be deferential does not mean that it is inconsequential. Federal courts do not merely "rubber stamp" the administrator's decision. *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004) (citing *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003)). "'Deferential review is not no review,' and 'deference need not be abject.'" *McDonald*, 347 F.3d at 172 (citing *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001)). While the plaintiff concedes that the LTD policy contains language necessary to grant discretion to the plan administrator, he asserts that the court should apply a less-than-deferential standard of review because the defendant had a conflict of interest and it agreed to a more demanding standard of review in a regulatory settlement agreement (RSA) with the United States Department of Labor and several state and territorial attorneys general.

Although the defendant has an inherent conflict of interest, that conflict does not require the court to abandon the "arbitrary and capricious" standard of review. A conflict of interest exists when the entity that administers an ERISA plan, such as an employer or insurance company, (1) determines whether an employee is eligible for benefits under the plan, and (2) pays those benefits out of its own funds. *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2346 (2008). Regardless of whether a conflict exists, the standard of review does not change "from deferential to *de novo* review." *Id.* at 2350. Instead, "a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and . . . the significance of the factor will depend upon the circumstances of the particular case." *Id.* The conflict will be a more important factor "where circumstances suggest a higher likelihood that it affected the benefits decision." *Id.* at 2348-50. The plaintiff has not presented any specific evidence that the conflict played any role in the defendant's decision-making. Nevertheless, because the defendant had an inherent conflict of interest, the court will consider that as a factor in determining whether the defendant's decision was arbitrary and capricious.

The defendant has a history of utilizing unfair claims-denial practices. This history, however, does not mandate that the court conduct a less-than-deferential review of the administrative decision. Like the defendant's inherent conflict of interest, the defendant's history of unfairly denying claims is a factor in the court's

5

determining whether the instant decision was arbitrary and capricious.

The RSA does not affect the court's review of the administrative decision. The plaintiff fails to provide any authority that supports the imposition of the standard agreed upon in the RSA as the standard of review in the instant action. Therefore, the RSA cannot be used to alter the standard of review that the court will apply when analyzing the defendant's decision.

### B.  Denial of Benefits

Substantial evidence supports the defendant's decision to deny the plaintiff's claim for LTD benefits, and, therefore, the decision was not arbitrary and capricious.  The plaintiff relies on numerous opinions of Dr. Shea that state that the plaintiff is unable to work in any capacity, including sedentary work.  AR at UACL00448, 519.  However, in several instances, Dr. Shea either opined that the plaintiff could perform sedentary work, AR at UACL00376, 408, 507, or failed to complete the evaluation form, AR at UACL00546.  While the defendant based its initial denial and the first appeal decision on Dr. Shea's opinion that the plaintiff could perform sedentary work, the second appeal focused on the findings of the IME.  Considering Dr. Shea's inconsistencies, the defendant did not act arbitrarily or capriciously when it chose to rely on the IME.  *See Robinson v. Dresser, Inc.*, No. 05-379-KSF, 2006 WL 462573, at *4 (E.D. Ky. Feb. 23, 2006) ("it is not arbitrary and capricious for a plan administrator to deny benefits after receiving an opinion from an independent medical evaluator which concludes that the plaintiff is not

disabled").

Dr. DeGruccio, the physician who performed the IME, determined that the plaintiff "clearly had no signs of effusion in his knee which is what he has reported has been the biggest problem postoperatively in both joints." AR at UACL00118. However, based on the "arthritic changes in [the plaintiff's] knees and especially in his kneecaps, Dr. DeGruccio recommended the following limitation on the plaintiff's activities:

> avoidance of kneeling, crawling, and squatting would be advisable, climbing and work on ladders would be limited, heavy lifting greater than 20 pounds should be avoided, repetitive twisting and bending at the knees should be avoided, and I also would recommend, considering his history of effusions, that we limit how much he is up on his feet to only about five to six hours a day with standing a maximum of 30 to 40 minutes per hour, and these restrictions will likely be permanent.

AR at UACL00116-117. Furthermore, Dr. DeGruccio refuted the plaintiff's argument that the pain resulting from his knee injuries would preclude him from performing any work, including sedentary work, by stating,

> In terms of my medical perspective of this case is that in 9 years of orthopedic practice, I have never seen a more blatant example of inappropriate pain behavior and symptom magnification. The dramatics of this patient during this examination were completely uncalled for and inappropriate and certainly exaggerated for the examination being performed as no significant provocative maneuver was being done . . . .

*Id.*

The court finds no reason to discount the IME. Although the plaintiff

contends that the defendant did not send all of his medical records to Dr. DeGruccio, the IME report does not support this. Dr. DeGruccio thoroughly discussed the patient's medical history and Dr. Shea's previous opinions. In addition, the plaintiff argues that the IME contained no objective findings. Again, the IME shows that Dr. DeGruccio thoroughly evaluated the plaintiff's condition. Specifically, he physically examined the plaintiff's knees and obtained X-ray studies of them.

On June 17, 2005, the defendant's vocational rehabilitation consultant reviewed the plaintiff's occupational history, education, and medical records. AR at UACL00456. Using that information, he identified two specific jobs that the plaintiff could perform. *Id.* A few months later, the vocational consultant evaluated the plaintiff's medical records and an updated list of restrictions and limitations recommended by Dr. Shea. The vocational consultant concluded that Dr. Shea's revised recommendations do not alter his original vocational assessment. AR at UACL00364. The vocational assessments further support the defendant's finding that the plaintiff could perform sedentary work and show that the defendant did not arbitrarily or capriciously deny the plaintiff's claim.

The determination of the Social Security Administration ("SSA") that the plaintiff is disabled does not indicate that the defendant abused its discretion in denying the plaintiff's claim. Under different facts, a defendant's refusal to consider the SSA's finding that a claimant could do no work "suggested procedural

unreasonableness." See *Glenn*, 128 S. Ct. at 2352. The SSA awarded benefits to Glenn before that plan administrator decided to deny his claim. Even though the plan required Glenn to apply for Social Security ("SS") benefits, it refused to consider the SSA's findings in its decision to deny the claim. Unlike the *Glenn* plan, the instant defendant did not require the plaintiff to apply for SS benefits. AR at UACL00629 ("Although filing for Social Security Disability benefits is required by your plan or contract for you to receive an unreduced disability benefit, we are waiving that requirement at this time as we anticipate your return to work in the near future."). Also, the instant defendant could not have considered the SSA's decision when it denied the plaintiff's claim because the SSA's decision came after the defendant's final decision. The defendant's final decision was made on April 18, 2006, but the SSA did not send the plaintiff a "Notice of Award" until January 8, 2007. Because the defendant had no opportunity to consider the SSA's determination when it reviewed the plaintiff's claim, the SSA's later decision cannot support a finding that the defendant acted arbitrarily and capriciously.

The defendant's "reasoned explanation" of its decision outweighs its inherent conflict of interest and history of unfair claims-denial practices. Nothing suggests that the defendant's conflict motivated or influenced its decision to deny the plaintiff's claim. In addition, the procedure that the defendant used to evaluate the plaintiff's claim was not indicative of an "aggressive claims-denial practice." Even after the defendant had denied the plaintiff's appeal, it permitted him to

9

submit additional evidence and requested an IME. The plaintiff's allegation that the defendant "harassed" Dr. Shea until he changed his opinion is unfounded. Employees of the defendant simply called Dr. Shea in order to clarify his written statements, which were either incomplete or contradictory to his previous opinions. Therefore, the administrative decision was not arbitrary and capricious, and the defendant did not abuse its discretion.

### III. Conclusion

Accordingly,

**IT IS ORDERED** that the construed cross-motions for summary judgment (R. 27, R. 30) shall be **DOCKETED** as such.

**IT IS FURTHER ORDERED** that the plaintiff's motion in (R. 27) is **DENIED** and the defendant's motion is **GRANTED**.

Signed on September 21, 2009

*Jennifer B. Coffman*
**Jennifer B. Coffman, Judge**
**United States District Court**